We're here at 09-178 Bemis et al. v. Safeco. Steve, are you ready to proceed, Counselor? Thank you very much. Thank you very much for supporting the Council. Yeah, you guys do a good job. I don't, and it was interesting because last night, and my wife is a pack wrangler, and last night, as I was thinking about this case, I went downstairs and I found my civil procedure notes from a couple of years ago, maybe longer than a couple of years ago, maybe 30-plus years ago. And I was looking at the notes that I had on class action. You know, the darndest thing is that nothing's changed. I mean, the laws have changed, but the rules are always the same. And I always used to use these devices to try and remember things about class action. And so I had my notes there, and it said adequacy, and it said numerosity, and it said commonality. And I guess that's pretty much still the same. And so then I thought, all right, that takes care of the class part of this appeal. And then the other part of this appeal, of course, is the action part. And the action part's really not terribly complicated. I don't think it's a breach of contract action. So I mean, you go back to my notes, Professor Emel, and it says offer and acceptance and consideration. And to show a breach, you have to show some kind of a breach of promise. So really, boiling this case down is pretty simple, I think. The simple question is whether or not Dr. Bemis, who's brought a breach of contract action on behalf of himself and a class, whether or not if he brings his contract action and he wins his contract action, does everybody else in the class get to win their contract action? And I'm thinking, I don't think so. And I don't think so for two big, important reasons. And I think that's what defeats class certification here more than anything. There's a lot of research, and there's a lot of paper and a lot of records that are discovered from this class action. It doesn't generate an awful lot of paper. But one thing that is clear to me is that as I've been following class action law for the last several years, is that when Avery came down, it was kind of a watershed case because it went to this notion of commonality. And it really put an exclamation point on the notion of predominance. And so with Avery, what Avery says is that in order to satisfy the second requirement of Section 2-801, which, back in my civil procedure notes, was just commonality, a common question of fact or law predominates over other questions affecting only individual class members, it must be shown that successful adjudication of the purported class representative's individual claims will establish a brighter recovery in other class members. And that was big. And that's the so-called brighter recovery tip, which I don't really remember that being back when I was studying it in law school. But I thought, you know, that was a significant case. For whatever reason, the Supreme Court made a judgment that they were really going to enforce what is meant by the common language of predominance for commonality. Now, Smith comes along. Smith comes along after that. And then, of course, if they wanted to change that pronouncement as to this so-called issue determinative or settle the entire controversy, they could. But, of course, they didn't. Not only didn't they, they repeated it almost verbatim. And they made it clear that the preponderance test is a big deal. Now, in this particular case, the resolution of Dr. Bemis' claim must, according to those two cases, necessarily establish a right of recovery in all other class members. To resolve his claim, now, remember, it's a breach of contract action. He must prove that Safeco breached its promise to pay a reasonable and customary fee. Now, to prove that, he's got to prove what? He's got to prove that his bill is reasonable, pretty simple, I think, and customary, and that Safeco failed to pay. Now, if he proves that, he wins. No question about it. But how does him winning prove what Safeco paid on submitted bills by different providers breached their promise to those other class members? How does Bemis winning his case, Dr. Bemis winning his case, establish that everybody else just has to line up for damages? And, of course, it can't because every other class member in this breach of contract action has to show that they had a promise breached to them, a promise that they would pay a reasonable bill in order to establish that. It is the point of burden of proof. I'll mostly place where that burden of proof is paid in the next subcommittee. But they have to show what? That their bill is reasonable. And they can't do that. You can't do that on a class-by-class basis unless you accept what their argument is. And their argument is really good. It's plentiful because they say, wait a second. He solved this problem. He says, and this is from the breach, he says, we just presume the charges submitted by any provider are reasonable presumption. That takes care of proving the breach. That's pretty good. It just presumes the bill is reasonable. That takes care of the common issue predominating the right of recovery because we assume every bill is reasonable. Then, of course, you set up a notion where all you have to do is submit the bills and then all you have to do is establish the right of recovery. And all they have left to decide is damages. That's how they deal with it. If we presume the bills are reasonable, that sets up right of recovery. That proves the factual predicate for the breach. And then all they have to do is that they have to then just come in and establish damages, which would represent the difference between what the doctor submitted as his bill and what the computer says is reasonable. That's it. Now, if you accept that, they win. There's just no question. I don't have any way of arguing it. Of course, if you make that law, I'll be grateful in my other cases because, of course, then we'll just get to presume that all bills are reasonable. Now, if we take this situation to a $1,000 no-pay policy, a chiropractor submits a charge for $200, and he says it's reasonable. According to their model, we presume it was reasonable. The computer says, wait a second, $100 is reasonable in customary. But since $200 is presumed to be reasonable as they say in their brief, simply in case of damages, $100 is the damages for that bill for that chiropractor. Incidentally, that chiropractor is the class representative. And so tested by those standards, he only has to see the patient five times to get his $1,000. And then the patient runs out of his cover, which is $1,000, which I guess, according to them, makes the chiropractor a perfect class representative for the insured patient who he is representing, pursuant to an assignment, that he makes the patient pay. But they say that's not accountable. And that's anecdotal representation of that standard. I mean, it really is silly. I mean, if you don't believe me that that's what they're saying, it's in the record. Look at this deposition. Dr. Bemis testified in this deposition as follows. Question. How do you determine, Dr. Bemis, what a reasonable and customary charge would be? Answer. That's done in the sole discretion of my father, the owner of the facility, Dr. Frank Bemis. Dr. Frank Bemis, according to his factual credits for their class action, is going to make a pronouncement that's going to carry through 14 states that what he says is reasonable is reasonable, unless you get to Ohio and then you have a different doctor who will say what I say is reasonable is reasonable. But look at their brief. This is what they said in the brief. Now, these are direct quotes from their brief. And once they read the brief, I thought, well, you're right. If this is all true and they accept these factual credits, game over. Resolution of this case, page 17 of their brief. Resolution of this case. Well, let's follow a straightforward two-step analysis. Number one, what does the reasonable payment limitation mean? And number two, is Safeco's computerized bill review sufficient to justify a payment limitation under the proper construction of the limitation provision? No, it's not a payment limitation. It's a breach of contract action, and you have to prove that the bill that you have submitted is reasonable, and you have to prove that if you show that, then you have to be able to demonstrate that, therefore, every other member of the class is having reasonable bills charged and not being paid. That's what the question is, and here's where they just agree. Because they say, quote, this is page 18 and 19, plaintiffs contend that the providers' usual bill fees submitted without fraud or bad faith are reasonable. Are reasonable. Under this theory, there are no individual issues. Well, I'll agree with that. Or we would assume every bill is reasonable. You've certainly established this. You've got commonality. And then it goes on to say, under the definition, claimant proposed, this is from their brief, the claimant need only show what the medical provider actually charged, absent fraud or bad faith. Just prove what he charged. Here's where we get to how they deal with A3s, issue-determinative issue. If the court were to concur with plaintiff's definition, a class member's claim would be shown by demonstrating that a claim was made for services and Safeco paid less than the actual charges. Not only would a central issue be resolved for each class member, but each class member would have a right of recovery from Safeco. All that will be left is for each class member to submit their proof of claim, show that they are a class member, insured or assignee, and the charged amount versus what Safeco paid. That's what they say in their brief. If you're going to accept that, they win. No question about it. I was looking for a bootstrap. I've always heard about bootstraps. I could never find a bootstrap. But if there was ever a bootstrap, there's your bootstrap. Because what they have done is that they have folded in an element of their proof, which is their burden. Reach a contract, demonstrate that a reasonable bill went unpaid, and they have folded that right in to the situation of saying, and that also takes care of the predominance test announced by APRE, because if we just presume that every bill is reasonable, it goes out and becomes a calculation again. That's what they're arguing. If it was that simple, it sure would make the DI business a lot easier, wouldn't it? I mean, it's just that if you take what they're holding in this case, is that you could say is that a guy's got heart and lung accident. He's got arthroscopic surgery. The doctor sends in a bill, $50,000 to do the arthroscopic surgery. According to what they're suggesting that this court has to do in order to certify their class, it's just that you would then have to just say, we presume that that bill is reasonable. It goes straight into evidence. What wonderful specialists have been running off in this field. Is the alleged breach of contract that they didn't pay the reasonable bill, or is the alleged breach of contract that they promised that they would actually make a determination but instead just did an automatic computerized? It's the former, Your Honor. It is the former, because, see, that's the thing they're trying to do. It's me, because the brief really tries to turn this into a question of coverage, because they say that the common issue is whether or not what constitutes reasonable, and they want to shift the burden. But that's that they chose breach of contract. The promise of the policy is that we promise is that we will pay all reasonable charges which arise out of it. And does that, would that in any way presume that some kind of method would be used by SACO to determine whether a bill is reasonable? I don't know that it necessarily presumes that. I can tell you that in point of fact in the real world, that's the way it happens. I mean, that's the way it's done. You know, there's 14 states, we're talking about, you know, millions of bills which are submitted, and this so-called computer model, they want to put the computer model on trial. First of all, whether the computer model is good, bad, or indifferent, is that you still have to show action, classic action, and the action is a breach of contract. So the question and the point is that if they have a breach of contract action and they have the burden of proving the elements of their cause of action, and one of the elements of their cause of action is just that there was what? A reasonable bill. How else can you prove reasonable? I mean, the only way they can do it in their briefs is they ask you to presume that every doctrine is reasonable. And I agree. Well, aren't they saying you presume that until you get to the damages side? Right? Well, aren't they saying, you know, Safeco, they never made a determination of whether each of these bills were reasonable, they just had an automatic cutoff. So we start off with if they took a discount, then we'll determine whether or not there's, whether or not that bill was reasonable on the damages side. But that it was a breach of contract for them to not even examine the thing. Judge, that's not what they're saying. They're special. What they are saying, or as they said last night on the good wife and my committee, is that what they are saying is not that. What they're saying is they're trying to say is just that the issue which is common to everyone is just that the court needs to determine what constitutes reasonable. I mean, they are saying this is that they're putting the burden on Safeco in a breach of contract action to say that Safeco has a responsibility to determine that, in fact, the bill is reasonable. Remember, for a class action judge, it's just that they would have to show, by doctoring this one in his case, they would have to demonstrate that there were all kinds of reasonable charges being submitted that were not being paid. To follow up on Judge Stewart's question, aren't they saying that that goes to the damages, though? They are because the only reason that they say that that goes to the damages is because it requires this court to presume that the charges are reasonable. I mean, that is exactly right. They go right to damages because what they've done is that they have suggested to the court, and that's why I quoted this from their own agreement. If the court were to concur with plaintiff's definition, plaintiff's definition proposes that the claimant need only show what the medical provider actually charged. It would be hard for the plaintiff to lose under their scenario, I understand that. That would be good enough to get me out of the office, and take care of all this. And, of course, there's another thing, honestly, and that is this notion of truth. And I'm not trying to argue policy here, but I mean, this computer isn't some kind of a big bad boogeyman. I mean, I practiced law back in the years when, you know, when chiropractor bills and bills were going in. There's the MedPay coverage, and it was always miraculous to me how as soon as you hit the top of the MedPay group, the limits guy got all better. But there is, if you accept what they're doing, they can't lose. It's unmovable. But the problem is that they have to plead a cause of action, and it's a breach of contract. Now, Dr. Venus may very well prove that the $9 that the computer chopped down on his bill was a breach of contract because the bill he submitted was reasonable. But then how does that resolution establish that Dr. Smith from Colorado has demonstrated that his bill is reasonable? The only way they get there is to engage in this resolution. And then what they do is they take care of two issues at once. That's how they have argued the commonality for the so-called proponents, because as you've indicated just before, that's what they do. Because then they say if the court were to confer upon its definition, a claim would be shown by demonstrating that the claim was made for services and Safeco paid less than the actual charges. That's the only way you get there. Because the presumption then is whatever the charge was, it's reasonable. And if you didn't pay it, you've breached the contract. And that's then how they get to the conclusion and deal with the requirement of Avery and Smith. And the Avery and Smith requirement says basically is that you've got to show that we'll establish a right of recovery under Title IX. Let me ask a question about the alleged conflict that the class representatives have, okay? So this is MedPay. If 80% of the patient's bill is paid to the chiropractor, then is it fair to presume that the patient then has to pay the other 20%? No, it's not fair to presume. And why not? Because that changes in all kinds of different states. I mean, that changes. And when we talked about the conflict, that's what I was trying to illustrate. I don't know what a reasonable charge for a chiropractor manipulation is. But the conflict is, you see, you've got a medical provider, in this case Dr. Beames. He's representing, of course he represents the class pursuant to an assignment. And, of course, when folks go to the doctor, everybody signs an assignment. And then at that point is that what he's saying is, and where I think you get into this advocacy issue, is that if you're going to let the talk about, you know, in their brief, they talk about safe coping and the fox in the house. Really, I think the argument would be that there's that potential because if the doctor is going to be paid whatever he deems to be reasonable for his charges, then that's going to have the effect of reducing the amount of coverage so that rather than getting ten visits, the guy might only get nine visits. Well, if he goes for one visit, wouldn't he rather have the full bill paid? Well, I agree with that. Then have to pay part of it himself. I absolutely agree with that. So doesn't it only become a conflict if you use up all of your med pay? That's true in some states, but not in others, which goes to another hole in one. I know we haven't got enough time to argue on this case. We've got a few other cases this morning. But the point is, Judge, is that your point is well taken when you say, well, does it only provide a conflict if you get up to it? Remember, they want to do the whole place. I mean, kind of a conflict in one situation doesn't mean conflict is suddenly resolved. But remember also that the laws of these 14 states are all different as it relates to the ultimate liability of the patient for getting unpaid medical bills. They are different. That's part of what you do when you try to go for 14 states. Some states would provide the payment of the bill. This is that the doctor accepts it and the patient is not going to be liable for the balance. Other states would provide if there is such a liability. It's set out in the appendix. This is where those laws are different. The other thing, just to move on, although, frankly, I really do believe that that, and the reason I spent that time on it is because I think that that's pretty much where I believe this thing really has a problem because in order for them to approve a breach of policy language requiring payment of reasonable charges, I know you're going to do that. You'll have time for rebuttal. Thank you. Good morning, Your Honors. Please support and counsel on behalf of Dr. Bemis and the certified class. I'd like to start with Mr. Keefe's argument that A3 totally changed the predominance standard in Illinois. He said that class action law was pretty much the same all those years and then A3 was this big bombshell that changed the class action standard for predominance in Illinois. But if you read A3 216L2 at 154, they say, We have not fashioned any changes to the legal rules governing class actions, let alone ones that are hostile to this device. This case has been decided under the same standards that have been applied to every case that is brought before this court. What he says is that A3 said you've got this new standard, which is the plaintiff has to prove, he has to sit in the witness stand and prove the case for everybody, and, quote, everybody else just lines up for damages. If that were the standard, what that would mean is if there were any individual issues other than damages issues, you could not have a class action. That is not the standard in Illinois. It is not the standard at the federal courts. It is not the standard in any jurisdiction in the country. There was a case called Southwestern v. Bernal that is out of Texas that Avery cited, and what Bernal says is that's the ideal case. In other words, that's the simplest class action. It's one size fits all. The plaintiff proves it, and all anybody has to do is submit a proof of claim. But most cases aren't ideal. In most cases, there may be individual defenses, individual quirks about some class members, and there are a variety of procedures for dealing with that. You can use statistics. You can use mini trials if it's appropriate. You can send some people back to small claims court to resolve their disputes. But that does not prevent a case from being certified as a class action. Following along with that last part there, do you believe that the issue of reasonableness goes to the damages stand? Well, it starts out as a question of insurance coverage. And it's not a predominant issue. It is a predominant issue as what does the contract oblige Safeco to do, what is Safeco's obligation under its no-fault med pay reasonableness provision? Would you believe that under certain circumstances there may have to be subclasses? Well, if you suggest that. Once we decide what reasonable means, then we'll figure out how does that get approved. But here's what I know for sure. I just want to know, could you give me an example of how the trial court would divide this into subclasses? Well, I don't think they're going to be able to challenge reasonableness. And here's why. First of all, they've paid up to a certain point. Voluntary payment of the bill is proof of reasonableness up to the point you paid it. So they can't say anybody should get less than what they paid. That's just standard law that you can show that a bill is reasonable because it was voluntarily paid. So up to where they paid it, it's reasonable. The question is how much more would they owe. That is far to say that's just a damages issue. But here's the other issue. Another thing he said is this is not a limitation on coverage. He challenged several times that reasonableness is not a limitation on coverage. But they are explicit at page 13 of their reply brief. They say that Safeco's policies limit its liability to reasonable charges. And then in the next sentence they call this a limitation of liability. So they cannot get out of what they said on page 13 of their reply brief. This is a limitation on liability. And the law is clear in all these states. The insurance principles are the same. When they're trying to limit their coverage in the policy, it's their burden to prove off that limitation. So it's not our burden to prove what's reasonable. It's their burden to prove why they're not paying the full bill. And here's the thing. All the evidence they got of what reasonableness is is some printout that came out of a computer. There's law saying that's not admissible evidence of what reasonableness is. Now, do you rely on Addison Insurance v. Faith primarily for this proposition that just submitting a bill proves that it's reasonable? Is that correct? I'm not sure. I think that one we submit mainly for the limitation of coverage being construed against the insurer. The voluntary payment of bills mainly comes out of PI cases. But this concept that just submitting a bill is sufficient to show it's reasonable, where does that come from? Well, that comes out of the purpose of the medical payments policy as set forth in Jackson v. Contributual and other Illinois cases. What is it that the insurer is buying here? Jackson says what they're buying is peace of mind and a little no-fault fund so that if they get in an accident, they don't have to sit there. Those first few visits to the doctor, they don't need to worry about who do I have to sue, where do I have to go to get this immediate coverage paid for. So what it's about is to have them not be involved in some kind of dispute about what am I going to pay the doctor, who's going to pay the doctor, am I supposed to sue the guy that hit me to get the doctor's bills paid, is the insurance company going to pay it, is that guy's insurance. What is the limitation language in Jackson on that? Isn't it there's bad faith, do they have to pay it? Oh, that's the Van Vactor case. That was where there was the challenge to necessity. And what they said is because what we're trying to do here is make sure that these people get taken care of in those early days after the accident, we're not going to introduce a lot of legal second-guessing that is going to just raise the anxiety. But in those cases, it states, I wish I had it. And they say that absent bad faith or fraud. Who has the burden of proving that, the absence of fraud or bad faith? The insurance company has the burden of showing that also. They should, yes. I'm not sure that that was expressly articulated there. It uses bad faith. Right. But you're assuming then that that also becomes a burden. And that's the Addison case in those cases that say, well, it's a limitation of what they admit in their brief. This is a limitation on coverage. And that goes with the no-fault thing, too. If the insurance company wants to come in and muck up the doctor-patient relationship, it should be their burden to show what's going wrong. In the Addison case, the issue was the limitation or the amount of coverage two boys were killed and whether they were doubling up on the minimum. The amount of the claim was not in dispute. They all agreed there was more than $2 million worth of damages. So the value of the claim was not in dispute. In this case, the value is in dispute. But the legal principle is the same, which is that they are limiting what their coverage is. In other words, they're not disputing that this is a covered claim. They're not disputing that it's necessary treatment. All they are disputing is what the limit on their payment should be. In Addison, it states, this court has long established that the burden is on the insurer to prove that its claim falls within the coverage of an insurance policy. Once the insurer has demonstrated coverage, the burden shifts to the insurer to prove that there's a limitation or exclusion applies. Exactly. And here there's no dispute about coverage because they paid partially for this treatment. All that's left is what's the amount that they should pay, and that is a limitation where they do bear the burden of their case. Isn't your primarily challenging the computer model in this class action? Right. And it's two things. One is that this computer model does not really do what they say it does. It doesn't compare doctor charges in the vicinity. But you want a trial on that issue, I guess, whether or not the reasonableness of these bills can be determined by the computer model. Right. And if it was determined that the computer model did make that determination under the contract, you'd lose, right? And they have not got up here and said what we did is right. Reasonable means what the IngenX database spits out as a fee schedule. They've never argued. What their expert came in and said, oh, no, that's not reasonable. Reasonable means their claim, and think about what they're arguing. Here's my question. Are you alleging, do you allege in the complaint, that they breached their contract by determining reasonableness by this computer model? Yes, that they imposed an unreasonable limitation that's already set. And all adjustments made by the MDR module are unreasonable. Right, improper limitations. Every one of them. Right. Well, then why don't you have to prove that the computer model is unreasonable? Why don't you have the burden of showing with your own computer model or your own expert to say that's unreasonable? And then you would, I mean, you'd have it right across the class. Well, that would be part of our case would be to show that this computer does not do what they say it does. But that's only in response to them after the burden's been shifted. Well, I want to go back. The first thing that we need to figure out is what does this policy obligation mean? It could mean they redefined their policy to say we'll look at a computer model to figure out what reasonable means. If that's what the policy says, then you've got at least some guidance as to what usual, customary, and reasonable means. But they're not arguing here that that's what it means. In fact, their experts said just the opposite, that you've got to look at all of it. You've got to get the doctor's income taxes. You've got to see what medical school he went to and how long ago he went to medical school. All that stuff has to be looked at in a no-fault policy to determine what reasonableness is. Our argument is that is not how you should construe this no-fault policy. And that's the first issue that the court is going to have before trial is to construe the policy. And we think that under Addison and Van Factor, putting all that law together, our view should prevail, which is that reasonable means what the doctor normally charges in the market, absent of showing a bad faith or fraud, which would have gotten referred to their fraud unit. And that's a dispute about what this ambiguous language means. That's the first issue that needs to get resolved for every class member. How do we construe this policy limitation? Then we think that will essentially show that as to the whole class, the way they construed this in their practice was wrong. So then that just raises a question as to the individual class members, how much did they get paid on top of what they already paid? If anything. If anything, right. In other words, you would agree that some class members, upon an individual examination of their bills, it would be determined that they were paid a reasonable amount. Depending on how reasonable is defined. We think it's possible that, first of all, there could be some people that were fraudulent. They could come in and show that this doctor was defrauding us. We've excluded people that were referred to their fraud unit already. But that's where I was coming back to the fact that, well, they can't bring in this computer program to prove it's unreasonable because that's not good evidence. So how are they going to prove unreasonableness? They have waived any legitimate basis for challenging reasonableness. All they've got is this computer program, which is not an admissible piece of evidence. So I don't even know how they are going to meet their burden. I don't know what evidence they could rely on to prove that somebody's fees were unreasonable because they've had their bite at the apple in the adjustment process. But you believe that all adjustments made by the NBR model are unreasonable. Is that what you're saying? They're arbitrary. They're arbitrary. I mean, you know, is the stop clock right once a day? Well, that, again, goes on. Are they unreasonable? Say that again? Are they unreasonable? We think that what they're doing is unreasonable. We think that the normal doctor charges are what this policy means. So some of them could be legitimate. There could be no complaints by the providers. Well, it depends how you construe the policy. If you go with our definition that absent bad faith, the doctor should get paid, then the burden is on them to show bad faith or fraud. In other words, usually the doctor charged us $50, but he thought he was taking us to Safeco and charged $100. That would be something they could show. Let me ask you one other question that I think Judge Stewart asked the public counsel earlier a little bit. Could you address the allegations that there's inherent conflict here based upon the fact that the providers are wanting to get as much of their fees as possible and that uses up the available med pay and policies for the patients, and they'll presumably get less treatment? First of all, Your Honor, hit the nail on the head that that's a rare circumstance that you actually get to the limits. But here's the point. What is the purpose of this med pay? This is not third-party coverage or something like that. This is to, quote, relieve anxiety of the insured. And it's our view that construing this policy, creating a dispute between the insured, the doctor, and the insurance company about nickel and diming every medical bill does not relieve anxiety for the insured. The insurance companies always want to pit the doctor and the patient against each other, and anybody who's been through that process of trying to get their medical bills paid understands that. There are a bunch of cases on assignments, like Loyola Medical that we cited, where, you know, if the insured comes in and says, You didn't pay my bill in full, the insurance company says, Well, you assigned it to the doctor, so you can't sue us. Then the doctor comes in and says, Okay, well, I got the assignment. I'll sue you for the money. And the insurance company says, Well, we don't think this is a valid assignment. It's the patient that should be suing us. And there's a long line of cases basically saying we're not going to get into that. Whoever sues you is the one that has the claim. There's no magic language that you have to have for the assignment. And, in part, this is because, quote, and this is what Loyola Medical says, the insured and the doctor have a unity of interest in getting paid. So we don't think there's any conflict. Isn't the patient's interest to get treatment, to get well, over and above his obligation to get paid or make sure that his bills are taken care of? Certainly. Isn't that his first? But that's why. Well, that's where the conflict comes in? Well, but it doesn't come into conflict under this MedPay coverage because the purpose of the MedPay coverage is to have this little pot of money that, let's get that out there and pay those doctor bills quick so that you don't have to worry about those first few weeks of coverage that you're getting. And to inject into that this nickel-and-diming process actually defeats the purpose of that coverage. That is, it creates anxiety for the insured as to, well, are they going to pay it full or are they only going to pay 80 percent or whatever? Let me ask you this. If we don't accept your position that the bill itself proves reasonableness, how would you proceed? Well, that is, first of all, a merits question, so I don't think it would be appropriate for Judge Prower or you to try to resolve that at this point, unless you think it's unambiguous on its face. Well, if it results in every, you know, having to prove up every class, every person in the class to prove up their bill, it may be relevant to certification. But if you think the language of the policy is ambiguous, then there has to be a determination which could look at extrinsic evidence to construe what the policy means, and it's premature to do that. But is it just an evidentiary rule that we find that the bill itself is not sufficient to show reasonableness? How do you proceed? You just don't feel that's an issue right now? Well, I don't think that should be decided now because it will fit. See, before you decide that, you need to decide, well, what does reasonable mean? In other words, if you're going to come up with a construction of the insurance policy and they've brought in an expert already to try to testify to what the policy means, that's extrinsic evidence. So it's premature at this stage to be having a plenary hearing to construe the insurance policy. Do you see what I'm saying? In other words, if it's ambiguous, you get to look outside the contract and see what people in the industry say and what the purpose of it is. And Judge Prower hasn't done that yet, and the evidence hasn't been developed to where the court could do it. And that's why there's a lot of case law saying that you shouldn't try to resolve the merits at the class certification stage. Now, suppose down the road there's various things that could come up. One is that they could say, well, the Intranet's database, that dictates what's reasonable, and that's what the contract means. If they seriously argue that that's what the contract means, which they don't really argue, they would win the case if the court agreed with them. If the Intranet's database resolves reasonableness, then they've paid what's reasonable for everybody. So you could resolve this whole case in their favor based on that construction of the contract. If you resolve the construction in our favor, then what would be left would be, well, how much do they owe the individual doctors? And if it's somewhere in between, then the court would have to make a determination about, well, is there a burden on the provider to show something? Do you just need to submit an affidavit? In a tort case where I think the burden's a lot harder, all you need to do to prove reasonableness is somebody sits in the stand and says, I know what doctors locally charge, and this is reasonable. That's the bare minimum. So maybe you have a claim form where each provider has to submit that, you know, I attest that my fees are reasonableness. That would be enough in a tort case to shift the burden to them to argue that it's unreasonable. Does it make any difference when the assignment was made at all, the timing of it, in your opinion? You know, I think theoretically the assignment could be made at any point in time. I don't think it has to be made before treatment, because it's an assignment. They're not assigning their whole insurance policy. They're assigning the benefits under the policy, you know, as to a particular treatment. Oh, okay, I'm done. Unless you've got any other questions, because you seem to have a lot. Thank you, counsel. Thank you. All right. Judge, in response to your question, Justice Donovan, is that Smith addressed what your question was, because they suggested that all these little technicalities like the elements of the cause of action, we can put that off for another day. Just certify my class now, and then let me go back and proceed, and maybe we'll have subclasses, which incidentally responds to your question, Justice Croninger, is that the law suggests that there's a need for subclasses. That issue was supposed to already be addressed before you certify the big class. But in response to your question, Justice Donovan, is that that question has been answered by Smith, because in Smith, the Illinois Supreme Court specifically said that when courts are considering a class certification, they are, quote, to look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law. And that's the point, and that's why I suggested at the very beginning that you can't certify the class unless, of course, you're going to make this presumption, which you do point out, Justice Durk, makes for a pretty darn good case. You just can't lose it. That's the only way to get there. I mean, and you have to say, oh, we'll get to that later. The Supreme Court in Smith says, no, you shouldn't get to it later. You need to get to it now, because it takes a lot of time, it costs a lot of money, and it creates a lot of uncertainty and angst when you go certifying classes. Until such time as you have established, as the Supreme Court said, is just that you must look beyond the pleadings to understand what the claims are. The claim in this case is a breach of contract. Inherent in their ruling, not our ruling. Their ruling. How do we get there? What is the reason for this when you're suing us for breach of contract? How do we get there? And they suggest by making some oblivious citation to a page in our brief about the fact that we have somehow admitted that this is a coverage issue. We have not admitted any such thing. Page 8 of the reply brief addresses their very argument. Bemis attempts to cast the reasonableness determination as an issue of policy coverage. This is a coverage issue. We're not talking about coverage. The issue is whether the bill charges for covered treatment were reasonable, and because the cause of action is breach of contract, they have the burden of proving that. And if Dr. Bemis proves it in his case, that doesn't necessarily mean, as we're instructed by Avery and as we're instructed by Snell, that that takes care of the inquiry for everybody else. That's why I think that that's really, that is an insurmountable hurdle for them insofar as this case is concerned. Citation is a lie. Oh, come on. Lie all of it. Lie all of it, Judge, is a case that you have asked about, and you referred to, in fact, implicated reason lie all of it. You were talking about this Goshen T case. I remember that case. But in lie all of it, remember, is that lie all of it dealt with a health insurance claim where there was no issue regarding a limitation on the liability of an insurer or the exhaustion of limited benefits. I mean, the insurer in lie all of it had no interest, no interest in curtailing reimbursement to the hospital. That was a one-person injury, huge injury, and the claim was with an HMO whether or not there was going to be payment. So I don't think lie all of it answers the conflict issue. I think the conflict issue is how you do it first. And that is that the patient has an interest in getting payment. And then you talk about the assignments, and that's another hook to the problem. Because the hook with the problem is that the doctors get the patients. Unless they get the patients, I'm sure they have a right to do that. Doctors have rights to do that. But they get them with the assignment. And so we're going to have one group of patients or one group of class of people who are the doctors, who are there with an assignment. But the laws of the different states on what constitutes a valid assignment are as different as night and day, I mean, from one state to the next. In addition, there's another class of patients who are the people who are actually injured, the so-called insured. And there is going to be a conflict because if one class representative has an interest in having this court adopt a rule or law that says my bill is reasonable and is presumed reasonable, then that is going to necessarily create a situation where patients might, not always, not always, but might, get into a situation where they don't get as much treatment. Now, that involves some anxiety. Anxiety is going to be one of the operative words with respect to what we're talking about here today. I just think it's just that, and that doesn't even get to some of these other issues. For example, Eleanor Law, I mean, there's a whole section in these briefs that we haven't had a chance to talk about, which has to do with the notions of federalism. Thank you, gentlemen, for your briefs and your argument today. We'll take a matter of advisement and get back with you in due course.